UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT GENE WELLS,
     Plaintiff,

v.                           CASE NO.:  5:21-cv-00019

TOMMY FORD, in his official capacity as
SHERIFF of BAY COUNTY, and RICK ANGLIN,
In his supervisor capacity

     Defendants.

## **DEFENDANTS' OBJECTION TO PLAINTIFF'S EXTENSION OF DISCOVERY DEADLINE AND SUBSTITUTION OF EXPERT**

Defendants, Tommy Ford, in his official capacity as Sheriff of Bay County, Florida, and Rick Anglin, in his supervisory capacity, through their counsel and pursuant to the Court's Order [ECF No. 42] files this Objection to Plaintiff's Motion to Extend Discovery and All Other Deadlines in this Case for 90 Days to Permit Plaintiff to Substitute Expert, and state the following in support:

## **BACKGROUND**

1.    Plaintiff made a voluntary decision to retain Ron McAndrew, a Prison and Jail Consultant, as an "expert" on this matter.

2.     Plaintiff's counsel is not only familiar with McAndrew[1], but Plaintiff's counsel recently retained McAndrew on another case, also against Sheriff Tommy Ford and Rick Anglin: *Pamela Stewart, et al v. Tommy Ford, in his official capacity as Sheriff of Bay County, Florida and Rick Anglin, individually and in his supervisory capacity*, Case No. 5:21-cv-00020-RH-MJF.

3.     McAndrew provided two "expert reports" regarding this matter, the first on May 19, 2021, and the addendum on July 28, 2021. Neither report is extremely voluminous, the first is seven pages, the latter is 12 pages long.

4.     McAndrew was originally scheduled to provide deposition testimony related to this matter on March 14, 2022 but was rescheduled at Plaintiff's counsel request until March 28, 2022.

5.     On March 24, 2022, the Honorable Robert L. Hinkle conducted a Motion for Summary Judgment hearing in *Pamela Stewart v. Tommy Ford*, Case No. 5:21-cv-00020-RH-MJF, wherein Plaintiff's counsel was present. Judge Hinkle made various comments and/or observations regarding McAndrew's proposed opinions during that hearing.

---

[1] Plaintiff's counsel also wrote in her Motion that McAndrew "is a very respectable gentleman and …she has known of him for any years and admired him." [ECF 41, ¶ 8].

6.     Regarding the instant case, the undersigned conducted McAndrew's deposition on March 28, 2022. On the date of his deposition, Plaintiff's counsel never raised any concerns about McAndrew's ability to testify.  In fact, Plaintiff's counsel engaged in asking questions of McAndrew during the deposition and did not at any time assert a concern that McAndrew lacked the capacity or ability to offer testimony.

7.     It was not until after McAndrew provided a less than stellar performance during his March 28, 2022 deposition that McAndrew notified Plaintiff's counsel of his desire to resign from this specific case.

8.     Prior to taking McAndrew's deposition on March 28, 2022, McAndrew required defense counsel to make payment to him for his time expended in giving deposition testimony. It should be noted that the defense counsel paid McAndrew the amount he requested, *i.e.* $1,737.00.

9.     Based on the correspondence provided by Plaintiff counsel [ECF No. 41-1], McAndrew sent an email correspondence to Plaintiff's counsel on March 29, 2022, stating that he was resigning from the case and that he is "getting very old and must recognize my age and its disenchantments."

10.     It is insightful that the correspondence provided by Plaintiff's counsel [ECF No. 41-2], shows that Plaintiff's counsel reached out to McAndrew on April 4, 2022 requesting a "medical diagnosis to confirm that

your testimony would be unreliable and should not have been given in light of your condition." McAndrew replied six days later that they "can't go the 'medical diagnosis' as I've testified not too long ago **and will be testifying again in the future**." (*emphasis added*). McAndrew suggested that Plaintiff's counsel could bring up his age (83) and that he relies on the assistance of a walker and or a driver/aid to help him get his walker out of the car.

11.    McAndrew's testimony during his deposition was consistent with what he had presented in his written reports, and it was evident that he had received and reviewed multiple documents.

12.    The record evidence is clear that McAndrew still intends to continue to provide expert testimony in the future in other litigation matters; however, he has merely elected to resign from this specific case. The Defendants assert that this does not create good cause for Plaintiff to be afforded an opportunity to extend discovery so she can retain a "new expert witness" after expert discovery deadlines have long passed and all other discovery has been concluded in this case.

13.    It was not until April 14, 2022, *i.e.* the discovery deadline in this case and 17 days after McAndrew first stated that he was withdrawing from his involvement in this case that Plaintiff's counsel finally filed a motion requesting an extension of time and permission to substitute McAndrew with

a new expert stating McAndrew's testimony was inconsistent with his report. [ECF. No. 41].

14.    Plaintiff had in his possession McAndrew's reports since May 19, 2021 and July 28, 2021, respectively. Furthermore, the deposition was completed on March 28, 2022 and Plaintiff was made aware of McAndrew's resignation on March 29, 2022. Quite simply, Plaintiff is not satisfied with McAndrew's deposition testimony, but that does not establish a good faith excusable neglect basis to grant an extension of time for Plaintiff's counsel to find a different expert witness.

15.    Defendants would be caused undue prejudice if this request for extension of time were granted. Specifically, Defendants have already paid for McAndrew's expert witness appearance fee, incurred expenses associated with the transcribing of his deposition testimony and would have to incur additional attorney's fees and costs in the event Plaintiff is allowed to obtain a different expert witness.

## Memorandum of Law

The standard for modification of deadlines is set forth in Rules 6 and 16 of the Federal Rules of Civil Procedure. Rule 6 requires a showing of excusable neglect when a party files a motion after the time for filing such a motion has expired, and Rule 16 requires a showing of good cause for

modification of a court's scheduling order. Fed. R. Civ P. 6(b)(1)(B) & 16(b)(4).[2]  Plaintiff is requesting to extend the discovery deadline and modify the Court's scheduling order. Since Plaintiff's expert disclosure was due May 2021 (almost one year ago) and the discovery deadline for the entirety of the case was April 14, 2022, Plaintiff must demonstrate both good cause and excusable neglect.

When evaluating if a party has shown excusable neglect the Court considers "'the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith.'" *PK Studios, Inc. v. R.L.R. Investments, LLC*, 2:15-CV-389-FTM-99CM, 2017 WL 495497, at *2 (M.D. Fla. Feb. 7, 2017), quoting Advanced Estimating Sys., Inc. v. Riney, 130 F.3d 996, 997-98 (11th Cir. 1997).

---

[2] Some Courts utilize Rule 16's standard for modifying a scheduling order, while others look to Rule 37. *Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d 1354, 1355 (S.D. Fla. 2016)

## **Plaintiff was aware of McAndrew's lack of preparation for depositions and issues with McAndrew's testimony due to findings by Judge Hinkle in *Stewart v. Ford***

Defendants would submit to the Court that the Plaintiff's Counsel's prior history with McAndrew is relevant, sheds light on the reason for McAndrew's sudden resignation, and the Plaintiff's subsequent request for substitution. Prior to March 28, 2022, and prior to the end of discovery in this case, April 14, 2022, Plaintiff's counsel was more than familiar with McAndrew and the testimony he was apt to provide, as Plaintiff's retained McAndrew to give expert opinions in the *Stewart v. Ford* case referenced above.

Additionally, the week prior to the deposition in the above-styled case, Plaintiff's counsel and McAndrew were provided insight into what the Honorable Judge Hinkle thought of McAndrew's opinions in *Stewart v. Ford* during a telephonic hearing on March 24, 2022, in which Plaintiff's counsel was present:

> The Court: But just a stray comment, I can tell you that one expects experts to prepare to go through the record and to be much more accurate in what they say than what your experts were. You have got experts remarkably inattentive to the actual record. Mattox: I would agree with that. With Dr. Rubin, I would agree. I would beg to differ about Mr. McAndrew. The Court: The one – Mr. McAndrew, who said that there was a mandatory evacuation at this site and that they were not getting – that the boil notice water – notice was being ignored? Mattox: Yes, sir. The Court: When, in fact the site – the site was not in the

evacuation area, and they had a well that had just passed inspection. (Exhibit 1: 29: 11-25 -30:1)

Judge Hinkle then went on to state when ruling on the Defendants' Motion for Summary Judgment that "these (Plaintiff's) experts showed a remarkable lack of concern for the actual facts."  Specially as to McAndrew, the Court stated:

> Mr. McAndrew, for his part, testified that Mr. Lucas came to the jail directly from a nursing home. That's not so. He testified that the jail should have transferred Mr. Lucas as the – as the medical doctor recommended. He certainly can't testify that the jail should have transferred him without any indication that was even possible. The jail did everything it could to bring that about.  He testified this was a mandatory evacuation area. He testified that the jail ignored the boil water notice. He gave a good bit of testimony about not having a certified officer within sight or sound, but that has nothing to do with the death or the issues in the case. Mr. McAndrew doesn't have any expertise that would allow him to testify that any of this contributed to Mr. Lucas' death.  So, bottom line, if the trial was going forward, these experts would be giving very, very little testimony, if any. (Exhibit 1: 46:15-17, 47:14-25 - 48:1-6)

Thus, prior to McAndrew's discovery deposition in the above-styled case, Plaintiff was aware not only of the preparation that McAndrew put into his reports and deposition testimony, but Plaintiff's counsel also knew that McAndrew had an affinity for drawing conclusions that did not rely on the readily available competent evidence. Therefore, it is likely McAndrew's testimony in the above-styled case would be extremely limited, if not excluded in its entirety. Plaintiff, however, did not at seek leave of Court to

extend deadlines or substitute his expert after Judge Hinkle's ruling on March 24, 2022, nor did Plaintiff seek to extend deadlines or substitute his expert the day McAndrew resigned on March 29, 2022.

### McAndrew's deposition testimony
### was not inconsistent with his Reports

Plaintiff claims that McAndrew provided testimony inconsistent with his written reports, due to his old age; however, that is unsubstantiated by McAndrew's sworn deposition taken on March 28, 2022 and his Expert Reports submitted on May 19, 2021 and July 28, 2021, respectively. Rather, Plaintiff's contention that McAndrew's deposition testimony was inconsistent with his reports is nothing more than a failed attempt to show "good cause." Sheriff Ford and Anglin submit to the Court that McAndrew did not deviate from his opinions provided in his expert reports; rather, his deposition testimony demonstrated how those opinions appear when drawn out into the light. The Plaintiff and McAndrew, based on his email to Plaintiff's counsel on March 29, 2022, are unhappy with the opinions he opined.[3]

---

[3] Plaintiff's Motion indicated McAndrew stated initially he "sensed that this [sic] my all-time worst deposition," before Plaintiff requested a medical reason for his desire to resign from this case. [ECF 41, ¶ 4].

The Defendants submit the following examples from McAndrew's reports and his deposition testimony to demonstrate McAndrew did not "deviate" from his reports:

In Plaintiff's expert reports, McAndrew claimed that "Plaintiff Wells was violently raped by Travis Bell with McCoy participating near the Bay County Jail's protective confinement shower." (Exhibit 2: Page 4 ). In his deposition, McAndrew opined that "any rape is horrible and brutal. Some more than others. This is the second case that I have worked where an inmate was raped with a broom handle. And in each case, it was horribly disgusting and hurtful to the victim. (Exhibit 3: 33:17-24). Thus, his opinion has not changed, and McAndrew described the incident in a similar manner as he did in his report. However, it is understandable that Plaintiff's counsel is not pleased with McAndrew's command of the facts when questioned beyond the sound bites of his report, as can be demonstrated in pages 34-41 of his deposition:

> Q: How long – what was the duration?  How long was he raped for?  A: I don't know or I don't remember if that information was in the investigation or not.  Q: How many people were restraining him while he was being raped? A: Two.  Q: How did they restrain him?  A: He was handicapped, had to walk with a walker.  Didn't take a whole lot to restrain a person like that… Q: Okay.  All right. how long was McCoy raping Mr. Wells for? A: I think I just answered that. I don't know if that information was provided or not.  It may have been provided.  I just don't remember. (Exhibit 3: 34:11-20, 24-25; 35:1-3)

McAndrew then went on to provide the opinion that: "restraining doesn't mean that you can physically hold somebody. Your mere presence, the threat of your presence can be restraining. If someone is standing in front of you and not allowing you to pass, they are restraining you." When asked where the two individuals were standing – "I cannot off the top of my head the position of each of these men that – McCoy and Bell in terms of the Plaintiff. I'd have to go back and do some review on that.  I cannot remember their exact positions." (Exhibit 3: 35:22-25 -36:1-11)

There is a video of this incident, thus, there was no reason for McAndrew to speculate as to the amount of restraint or force used. When the Defendants pressed McAndrew on his ability to view the video and see that McCoy was neither behind nor in front of Wells, McAndrew stated that he was sticking by his testimony that McCoy was still restraining Wells. Thus, the lack of foundation supporting McAndrew's opinion was drawn out in his deposition testimony, but there was nothing contradictory between his written report and the deposition testimony. In fact, the contrary is true, when pressed, McAndrew doubled down on his opinions outlined in his reports.

One of McAndrew's main opinions in his report dated May 19, 2021, was that the Bay County Jail was in violation of the Florida Model Jail Standards by allowing non-certified officers at times to monitor the protective

confinement area with the use of cameras and without the direct sight and sound supervision of a certified correctional officer. Not only did McAndrew not deviate from his opinion, but he demonstrated accurate recall as to what was in his report and did not hesitate to reference it.

> Q: You've given an opinion the Bay County Jail was in violation of Florida Model Jail Standards by having noncertified corrections officers at times monitor the protected confinement door with the use of cameras.  Which Florida Model Jail Standard is that a violation of specifically?" A: I thought I had that in my report. Q: You did.  I'm just making sure that that's the correct one. A: I don't see if off the top of my head, but it's in the report. Q: So, who was it that was monitoring the cameras that was not certified such that this was a violation of Florida Model Jail Standards? A: Beasley was one.  Howard Beasley.

(Exhibit 3: 47:23-25 - 48:1-12)

Additionally, McAndrew stated, regarding his opinion that the Bay County Jail was in violation of the Florida Model Jail Standards, "they needed certified staffing as opposed to noncertified. They had the citizen sitting behind the window supervising without the certification or training." (Exhibit 3: 52:5-8).

In his report dated July 28, 2021, McAndrew provided the opinion that Wells was violently raped, and then removed from protection, leaving his assailants behind. His opinion failed to take into consideration any other point of view, such that Wells was moved immediately for his own protection while

his assailants were identified. During his deposition, McAndrew was challenged on the location Wells was moved to after the incident came to staff's attention, and while he had the pertinent documents prior to writing the report, and was shown the documents in his deposition, he insisted that Wells was removed from protective confinement. McAndrew's failure to consider or accept that Wells was moved to a more secure confinement area is not a deviation from his reports nor is it a reason to allow Plaintiff leave to substitute his chosen expert. He stated that from the investigation and general materials he reviewed in the course of the case, Bay County Jail did not have another confinement area, and yet he could not testify to what the C dorm actually was at that time. An excerpt of McAndrew's deposition is below but see pages 60-66 for complete context.

> From McAndrew's Report: the very notion that Mr. Wells could be violently raped with the handle of a broom and then removed from protection, leaving his violent assailants behind, is beyond correctional comprehension. (Exhibit 4: 10)

> From McAndrew's Deposition: oh, the evidence that this poor man who's been attacked going into the protective confinement shower by two inmates that were not in protective confinement, had no business being there, was then reassigned to another cell outside of protective confinement. He's being punished for getting assaulted by giving him a top bunk when it's obvious that he's handicapped. (Exhibit 3: 60:16-22)

McAndrew remained consistent in his opinion of the investigation conducted by Bay County Sheriff's Office. In his Report dated July 28, 2021, McAndrew called the investigation "flawed," stating that "Officer Sean Burkett's flawed investigation (unlawful and unqualified investigation of PREA crime) only hindered matters in terms of the real meaning of Protective Confinement." McAndrew provided the same opinion in his deposition: "Q: [W]as Sean Burkett the investigator assigned to this, this rape? A: He was the one who investigated the rape. I believe it goes without question that he was assigned to do this work." (Exhibit 3: 55:17-21). Thus, McAndrew's opinion that Burkett conducted the investigation was known by Plaintiff in July of 2021, and it did not change in his deposition, rather he was challenged on that opinion – he was challenged what he knew about the investigation, and if Burkett was the investigator, or a deputy who was tasked with locating a video, and when a video was located, the investigation was assigned to Investigator Marc Bailey. An excerpt of McAndrew's deposition is below but for complete context see pages 53 - 60.

"Q: And what was flawed about Burkett's efforts? A: That he was not qualified for starters. And most importantly. He was not qualified…. Q: Did you ever find a document assigning this to Burkett as the actual investigator of this case. Q: No, ma'am." (Exhibit 3: 59:8-18). Once the undersigned

showed McAndrew a document regarding the investigation being assigned to Investigator Bailey, McAndrew did not change his opinion that it was a "flawed investigation," but claimed it was flawed due to it being a "delayed investigation," and that evidence could be tampered with, due to said delay. McAndrew then went on to say that the investigation needed "every piece of evidence possible," and that he "would have gathered and given to the court any and all possible evidence required," and he would have collected all of the brooms, every single broom and would have gotten fingerprints off of each broom, to "confirm who handled the broom." (Exhibit 3: 67:25 -68:1-21)

When questioned about the evidentiary value of fingerprints to confirm who handled the broom when there is a video of who handled the broom, and a pod full of eyewitnesses, McAndrew claimed that "the court makes those decisions. The investigator doesn't have that opportunity to. If he does, he's not an investigator. If he does, he's not investigating a very serious crime," and that he would have lifted prints off of the broom that was handled by every inmate in the pod and submitted them all to FDLE to identify the perpetrator. (Exhibit 3: 67:3 – 70:14).

The fact that McAndrew did not deviate from his opinion but rather was challenged on the basis of his opinion is critical in the analysis before the Court. Plaintiff submitted to this Court that due diligence was exercised and

the issues with McAndrew and his "age" were not discoverable until four days prior to the close of discovery. Defendants Sheriff and Anglin submit that the deficiencies in utilizing McAndrew were discoverable to Plaintiff from the time he submitted his initial report on May 19, 2021. By way of example, McAndrew's opinion that Burkett was the investigator, and the investigation was "flawed," was contained in McAndrew's report, as were all of the underlying documents indicating Marc Bailey was assigned as the Investigator, conducted an investigation, and charged two individuals for their actions against Wells. Thus, it is unknown whether Plaintiff failed to review the expert reports he submitted or thought McAndrew's opinions would go unchallenged. Either option represents a lack of due diligence on behalf of Plaintiff.

Defendants submit to this Court that McAndrew did not deviate from his opinions expressed in his reports during his deposition, and Plaintiff's would have been aware of said issues with his opinions at the time McAndrew provided his reports to Plaintiff. Therefore, the Plaintiff should not now, almost a year after McAndrew provided his reports, be allowed to substitute his expert and receive an extension.

## McAndrew did not testify that he had not received documents that were listed in his reports

It is clear from McAndrew's sworn deposition testimony that he received documents – and reviewed them all, as the documents are referenced throughout his reports, and he referenced reviewing different documents throughout his deposition. The only document McAndrew stated was not provided to him was classification documents pertaining to Bell and McCoy. (Exhibit 3: 85:19 - P88:25). It is clear, however, from his reports that McAndrew reviewed various classification documents and in fact gave many opinions on classification, that would have been known to Plaintiff long before McAndrew's deposition, had Plaintiff reviewed their own expert's reports.    McAndrew has 26 documents labeled "classification records." McAndrew opined in his report that "the classification of Inmate Bell after the booking process would take into account a variety of factors," and that "the primary objective of Classification is to place inmates in the type of quarters that best meet their needs and provide reasonable protection for all inmates." McAndrew then provided the opinion that "this was a failure of the Classification process," and that "this obvious misclassification or lack thereof resulted in the horrible and brutal rape of the Plaintiff." Thus, McAndrew had no issue in formulating opinions regarding the classification of Inmates in the Bay County Jail relevant to this incident, nor did his opinion as to classification in his deposition change: "I know that they have a

classification process they are supposed to follow. It's outlined very clearly in the Florida Model Jail Standards 2018. And it's through that classification process that people are assigned to every cell they go to throughout that entire jail. They don't just bring people in and say this is where you're going." (Exhibit 3: 83:9-15)

## McAndrew's age does not adversely affect his ability to continue to perform as an expert witness

Plaintiff, by way of his motion and the email attachments from McAndrew, is submitting to this Court that the reason McAndrew is withdrawing, and he is in need of an extension of discovery,[4] and permission to substitute his expert is that McAndrew is "getting very old" and must recognize his age and its "disenchantments." Defendants submit the following in response to Plaintiff's contention the reason McAndrew withdrew is due to his age (83) versus his poor performance during his deposition testimony:

In ECF No. 41-2, McAndrew suggested to Plaintiff's counsel that she attempt to argue that reason for withdrawing is his age (83) and that she might want to mention that he can no longer walk without aid of a walker and then only for short distances, and that he cannot go someplace away from

---

[4] Plaintiff's expert disclosures were due May 20, 2021, having been provided a 10-day extension from the original deadline.

his home without a driver/aid to help get his walker out of the car.  Defendants would submit to the Court that in the *Stewart v. Ford* case, previously mentioned, in McAndrew's deposition testimony on January 17, 2022, only a few short months ago, McAndrew provided the following testimony about driving:

> Q: How much do you charge an hour for your services? A: 250. ..It depends on what I'm doing.  If it's something like this, it's 350.00.  If it's reviewing documents, it's 250.  If it's waiting time, it's $90 an hour.  Mileage is 60 cents a mile, which by the way, it's saving you $800 today, because I just happen to be come through Tallahassee on – from my pleasure trip in Alabama.  So, you won't be billed for that. (Exhibit 5: 15:13-24)

Furthermore, McAndrew demonstrated in his deposition testimony that memory recall is not the issue – causing his present "disenchantment." By way of example that old age was not impacting McAndrew's memory in any way during the deposition testimony on March 28, 2022, when asked about his work history, McAndrew went into details about a job that he had from 1961-1979 with a company in France. (Exhibit 3: 7-11)

> I started out as a salesman covering the Mediterranean from Italy across Southern France to Spain, Morocco.  I was then promoted to the vice president and general manager of the Far East and Southeast Asia operations after spending a year in Lebanon. And I then lived and worked in Japan, Korea, Hong Kong, Vietnam, Thailand, Guam, and finally I worked in an office for that company in Honolulu. (Exhibit 3: 10:12-20)

When asked about the products the company dealt with McAndrew replied:

> Luxury products that you find in duty-free shops, hundred-dollar neckties, French perfumes.  We had all of the top lines -- … top of the line fragrances and associated products. Things like expensive neckties, expensive cigarette lighters, that came from the French companies of Patou, Garban, Dana, Long Ba, SUP, Madame Rochas, Werth.  And there may have been a couple of others that escape my memory at this moment. (Exhibit 3: 10:23-25, 11:6-12).

Defendants would submit what is most telling about the attempt by McAndrew to withdraw as an expert, and for Plaintiff to seek his substitution and it having absolutely nothing to do with his age is contained in ECF. No 41-2.  The "disenchantments" of age, whereby one gives their "all-time worst deposition" because of their age do not go away, but rather worsen with time, as one continues to age. However, McAndrew is not discontinuing his work as an expert, he is not notifying all of his clients of his newfound recognition that he is "getting very old" and must recognize his "age and its disenchantments."  McAndrew does not believe his testimony was "unreliable" due to old age – not really, because McAndrew "will be testifying again in the future." Rather this is simply an attempt by Plaintiff to retain a new expert when "the clock of litigation is about to strike midnight", after their expert gave what he considered his "all-time worst deposition."  One can only opine what the true reason McAndrew chose to withdraw from the case, *i.e.*

whether it be he finally realized his opinions were going to be challenged in a *Daubert* Motion and/or a Motion in Limine and he realized he lacked any foundation for those opinions, or he was concerned he would be excluded from testifying at all.

Courts have held that "expert witnesses may be substituted 'when unexpected events prevent the designated expert from testifying at trial,' including the expert's conflict of interest, recovery from leukemia, incarceration, and Alzheimer's disease." *PK Studios, Inc. v. R.L.R. Investments, LLC*, 2:15-CV-389-FTM-99CM, 2017 WL 495497, at *3 (M.D. Fla. Feb. 7, 2017), quoting *Leibel v. NCL (Bahamas) Ltd.,* 185 F. Supp. 3d 1354 (S.D. Fla. 2016). None of those factors are present here, in fact to the contrary, the stated reason for "good cause" clearly cannot be the reason for McAndrew's withdrawing from the case, as he intends to continue testifying. In *Leibel v. NCL (Bahamas) Ltd.*, 185 F.Supp.3d 1354, 1357 (S.D. Fla. 2016), an expert witness refused to testify, much like McAndrew appears to be doing in this case. The Southern District found that the expert's "refusal to testify was entirely preventable;" holding, "[q]uite simply, Plaintiff did not prepare her expert to present an admissible expert medical opinion." *Id.* While this case is not related to the medical treatment of Plaintiff, it is related to jail policies and procedures, which McAndrew, as he testified in his

deposition, has been found competent to testify as an expert in that field hundreds of times in multiple courts of law.

### **<u>Plaintiff cannot show good cause or excusable neglect and Defendants would be prejudiced by Plaintiff being allowed to substitute his expert and extend discovery deadlines</u>**

In *Liebel*, the Southern District reviewed what the plaintiff could have and should have done to ensure her expert was adequately prepared for cross examination; holding, "the Plaintiff's failure to provide her expert with adequate medical records, her inability to be examined by her expert and her failure to adequately prepare her expert for his deposition, do not constitute good case for a modification of the scheduling order. *Id.* at 1357-58. That is similar to what has occurred here. McAndrew has effectively withdrawn leaving Plaintiff without an expert witness, which Plaintiff admits in his Motion "McAndrew's testimony was actually worse than having no expert at all." (ECF 41 p. 2, ¶ 2). Plaintiff further states, while McAndrew later seeks removal from the case because of age, his initial response was that the deposition on March 28, 2022 was his "all-time worst deposition."

Plaintiff's failure to prepare his expert for his discovery deposition is not a good faith basis for Plaintiff to substitute his expert. Defendants submit to the Court that Plaintiff's counsel was on notice the type of preparation McAndrew needed prior to deposition, having just recently participated in the

deposition of McAndrew in the *Stewart v. Ford* case, where the undersigned counsel took the deposition testimony of McAndrew on January 17, 2022, and Plaintiff's counsel concluded the deposition by asking McAndrew the following question: "Mr. McAndrew, had you had your documents with you, the documents you have relied on, would that have assisted you in answering some of the questions that you have answered today? A: Of Course." (Exhibit 5: 117:12-17). Thus, Plaintiff's counsel was aware that her expert did not thoroughly prepare himself for depositions two months prior to the deposition he gave in this case.

Furthermore, McAndrew's opinions, which were consistent between his reports and his deposition testimony, were readily available to Plaintiff long before the deposition on March 28, 2022. Similarly, to what occurred in *Liebel*, Plaintiff cannot demonstrate good cause for why he did not seek leave to substitute his expert long before April 14, 2022, the day of the discovery deadline in this case. Plaintiff admittedly knew on March 29, 2022 that McAndrew was not willing to testify and Defendants would argue Plaintiff knew almost a year prior when McAndrew submitted his first report. Therefore, "it was entirely foreseeable that [McAndrew] would perform poorly … and would ultimately be a detriment to Plaintiff's case." *Id*. at 1357.

Plaintiff has not established excusable neglect, having waited almost one year to seek to substitute McAndrew after his initial report and having waited over two weeks after McAndrew's deposition to seek to substitute his expert, actually allowing the discovery deadline to effectively end before requesting leave of the Court. Like in *Liebel*, the Defendants in the above-styled case would suffer prejudice should the Court modify the scheduling order at this time. The Southern District noted "both the parties and the Court have an important interest in the reliability of scheduling order deadlines." *Id*. at 1358, f. 7.

## Prejudice to Sheriff Ford and Anglin

Defendants Sheriff and Anglin have incurred various expenses in the defense of this case as it relates to Plaintiff's expert McAndrew. Defendants paid $1,737.00 to McAndrew to take his deposition in order to challenge him on the opinions he provided in his report and his addendum, and defense counsel incurred an additional expense of $1,005.00 for the court reporter fee to provide an expedited transcript of McAndrew's deposition testimony. Additionally, Defendants have incurred expenses for the review of his expert reports, the preparation for taking his deposition, and in retaining their own expert in response to his initial report.

Not only would Defendants be financially burdened and prejudiced by Plaintiff substituting McAndrew with a new expert at this point, but they would also be prejudiced in the defense of this case.  It is impossible to say at this point the totality of the adverse impact such a substitution would have on the Defendants, but one can easily contemplate the necessity to have an expert review the new report, the possibility of needing an additional expert to rebut that report, and additional deposition testimony taken based on the content of that report.

## Conclusion

McAndrew was deposed for approximately three hours on March 28, 2022. At the conclusion of the defense counsel's questioning of McAndrew, the Plaintiff's attorney questioned McAndrew at length about his opinion as well. At no point in time on March 28, 2022 did Plaintiff's counsel or McAndrew ever ask to stop the taking of his deposition or state on the record that he was in any way impaired. Clearly, after providing this deposition testimony, McAndrew was not satisfied with how his opinions might make him look. Being 83 years old and walking with a cane or the aid of a walker is not tantamount to a witness being incompetent or lacking lucidity. The Courts provide reasonable accommodations to any witness who has mobility issues. McAndrew's age and lack of ability to walk without the aid of a walker,

and only for short distances, would have been known prior to the deposition taken on March 28, 2022. After all, McAndrew was 82 years old when he prepared and submitted his initial and supplemental expert reports in this instant litigation. Furthermore, McAndrew would not be planning on testifying in the future, when he will be even older than he was on March 28, 2022, if he truly believed that his mental faculties were impaired due to his age.

Defendants submit that the reasons presented by the Plaintiff do not equate to "excusable neglect" and Plaintiff should not benefit from his failure to properly vet a potential expert witness. In addition, McAndrew should not be rewarded by collecting a substantial sum in expert fees, withdraw after his opinion was challenged, claim "old age" and then go on to provide testimony to another Court at a later date – as it is disingenuous at best, and tantamount to perpetrating a fraud upon the Court, or any future Court in which he may testify. Thus, Defendants, Sheriff Ford and Anglin, request this Court deny Plaintiff's motion in its entirety and award any fees and costs deemed appropriate for the defense of this matter.

DATED this 20th day of April 2022.

WARNER LAW FIRM, P. A.
*/s/ Jennifer Hawkins*
JENNIFER HAWKINS
Florida Bar No. 17694
501 W. 11th St. Suite A

Panama City, FL  32401
Phone No. (850) 784-7772
pleadings@warnerlaw.us
*Counsel for Defendants,*
*Ford and Anglin*

## CERTIFICATE OF LOCAL RULE 7.1(f) COMPLIANCE

Pursuant to N.D. Fla. Loc. R. 7.1(F), this motion contains 5907 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed via CM/ECF

this 20th day of April 2022, which will send notice to all counsel of record.

*/s/ Jennifer Hawkins*
JENNIFER HAWKINS
Florida Bar No. 17694