## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**ROBERT GENE WELLS,**

                                       **Case No.: 5:21-cv-00019-TKW-MJF**

        **Plaintiff,**

**v.**

**TOMMY FORD, in his official
capacity as SHERIFF OF BAY COUNTY,
and RICK ANGLIN, in his supervisor capacity,**

        **Defendants.**

_____/

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Robert Gene Wells, files this Sur-Reply in Opposition to Defendants' Motion for Summary Judgment.  Pursuant to this Court's Order [Doc. 70], the sur-reply is limited to the issue of whether the "undertaker's doctrine" is applicable to the present matter, as it was raised for the first time in Defendants' Reply.

With little explanation, Defendants argue that pursuant to the "undertaker's doctrine," one who undertakes an act thereby becomes obligated to use reasonable care. [Doc. 64, pg. 19]. It concludes this brief section by arguing that the "undisputed, record evidence in this case establishes that [the] Sheriff acted with

reasonable care in the classification and confinement of Plaintiff." [Id.]. Ultimately, it appears that Defendants argue that the doctrine is inapplicable here.

The Florida Supreme Court, in Wallace v. Dean, discussed the Undertaker's Doctrine extensively. 3 So. 3d 1035 (Fla. 2009). The Court analyzed the doctrine and determined that 1) the sheriff owed a common-law duty of care to the victim; and 2) because the deputies' actions were undertaken within the scope of their duties and clearly operational in nature, the sheriff was subject to "responsibility and accountability[.]" Id. at 1054. To support its holding, the court referenced the First District Court of Appeal's decision in Hartley v. Floyd, 512 So. 2d 1022 (Fla. 1st DCA 1987), as "particular significance" to its ruling.

In Hartley, the court reviewed a final judgment in favor of the appellee, which arose out of a situation in which a deputy with the Levy County Sheriff's Office assured the wife of a missing man that he would check the boat ramp from which her husband had launched his boat earlier that day. Hartley, 512 So. 2d at 1023. The deputy then failed to check the ramp but told the wife he had done so. Id. at 1023-24. Consequently, in reliance upon the deputy's assertion, the wife did not conduct any further effort to locate her missing husband. Id. The next morning, she was again told that a deputy had checked the ramp. Id. Eventually, the wife contacted the Coast Guard, initiating a search. Id. at 1024.

The Sheriff of Levy County argued that he was entitled to immunity because "first, the alleged negligence on the part of the sheriff's deputy involved an exercise of discretion and not merely a ministerial or operational activity, and, second, because he owed no special duty to Mrs. Floyd different from his general duty to the public at large." Id. The court stated that once the deputy told Mrs. Floyd he would go to the boat ramp and look for her husband and make contact with the Coast Guard, "he had a duty to perform these tasks with reasonable care. His negligent failure to perform the tasks once he agreed to do so can be a basis for holding the sheriff liable." Id. (citations omitted, italics added).

In Wallace, the appellant alleged that two Marion County Sheriff's deputies had responded following a 911 call, and then "undertook to determine [the subject of the 911 call's] safety, thereby assuming a duty of care, and negligently increasing the risk of harm that [the subject] faced by failing to summon an ambulance, which proximately resulted in [her] death." Wallace, 3 So. 3d at 1041. The Court explained that the deputies were not at the subject's property pursuant to the Fourth Amendment, i.e., "to enforce any law and certainly were not engaged in the protection of the general public; instead, they affirmatively sought to provide a service (a 911 safety check) to a specific individual[.]" Id. at 1049 (citations omitted, emphasis added).

As to whether the deputies "simply" exercised poor judgment in failing to call the ambulance, which the sheriff asserted should afford him immunity, the Court stated "even 'poor judgment' may result in negligence" because

> A failure to conform to the standard [of care] is negligence, therefore, even if it is due to clumsiness, stupidity, forgetfulness, an excitable temperament, or even sheer ignorance. An honest blunder, or a mistaken belief that no damage will result, may absolve the actor from moral blame, but the harm to others is still as great, and the actor's individual standards must give way in this area of the law to those of the public. In other words, society may require a person not to be awkward or a fool. Prosser and Keeton on the Law of Torts § 31, at 169 (W. Page Keeton, et al. eds., 5th ed.1984) (footnotes omitted).

Wallace, 3 So. 3d at 1042 (brackets in original).

The Wallace court analyzed whether the sheriff "owed the decedent a common-law duty of care pursuant to traditional principles of tort law without having to engage in any inquiry concerning the public-duty doctrine or whether a 'special duty' or 'special relationship' existed between the Sheriff and the decedent[.]" 3 So. 3d at 1050 (citing Trianon Park Condo. Assoc. v. City of Hialeah, 468 So. 2d 912 (Fla. 1985)). The court opined:

> Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon [the] defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.

> [A]s the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken.

Id. (quoting McCain v. Florida Power Corp, 593 So. 2d 500, 503 (Fla. 1992) ("[T]he trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.")). The Wallace Court then explained the undertaker's doctrine duty in detail, and as it is critical to Plaintiff's claims, it is worth reviewing in full:

> Three sections of the Restatement (Second) of Torts (1965) outline the parameters of this doctrine. First, section 323 provides:
>
>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>>
>> (a)   his  failure  to  exercise  such care increases the risk of such harm, or
>>
>> (b)   the *harm  is  suffered because  of the other's reliance upon the undertaking*.
>
> (Emphasis supplied.) Section 323 "applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it"; however, "[t]he actor may normally abandon his efforts at any time unless, *by giving the aid*, he has put the other in a *worse position* than he was in before the actor

attempted to aid him." § 323 cmts. a, c (emphasis supplied). Consequently,

> [w]here ... the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other *has been increased by the partial performance, or* because *the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance*, the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated.

§ 323 cmt. c (emphasis supplied). Section 324 provides further elucidation of these general principles in situations where the actor "takes charge" of the injured party:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
>
> *(a)   the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or*
>
> *(b)   the actor's* discontinuing his aid or protection, *if by so doing he* leaves the other in a worse position *than when the actor took charge of him.*

(Emphasis supplied.) Finally, section 324A supplies additional insight concerning the type of harm that the

tortfeasor's alleged negligent undertaking must have caused for the courts to recognize a duty of care:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a)   his failure to exercise reasonable care increases the risk of such harm,
> (b)   he has undertaken to perform a duty owed by the other to the third person, or
> (c)   *the harm is suffered because of reliance* of *the other or the third person upon the undertaking.*
>
> (Emphasis supplied.) The disjunctive "increased risk" and "reliance" requirements are both key factors in limiting potential liability. See Clay Elec., 873 So. 2d at 1188; see also Restatement (Second) of Torts § 324A, cmts. c, e (1965).

Wallace, 3 So. 3d at 1050-52 (some italics in original, some added).

Moreover, as explained in Wallace, liability can be imposed if the actor fails to exercise reasonable care to complete the duty undertaken, or to protect the person to whom the duty is owed, should he discontinue the actions. 3 So. 3d at 1050. While the actor may normally abandon his efforts at any time, he cannot do so if by giving the aid he has put the person in a worse position than before the actor engaged his actions. Id.

In light of the above, Plaintiff is unclear as to why the Defendants included the "undertaker's doctrine" in their Reply.   It actually benefits the Plaintiff's negligence claim (Count VI) in that the Defendants undertook to care for the Plaintiff and failed to exercise reasonable care in doing so. Although Defendants have referenced this doctrine in their Reply, they do not appear to argue that it absolves them of liability, instead arguing that Plaintiff never filed any type of complaint about his housing or treatment by other inmates, and thus it cannot be liable for negligence.

In making this argument, Defendants have apparently overlooked the fact that the Plaintiff has a severe brain injury and even has a guardian prosecuting this case on his behalf.   Nowhere have Defendants brought forward any evidence that Mr. Wells could have, knew how to, or was in any way able to file a complaint.  In fact, another inmate who witnessed the attack on Mr. Wells filed a complaint after witnessing the abuse to him in the Defendant Sheriff's Jail.

## CONCLUSION

Disputed issues of material fact remain, requiring resolution by the jury. Accordingly, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, Florida   32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance this Court's Order, that this response contains

1960 words.

/s/  Marie A. Mattox
Marie A. Mattox

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served this

12th day of July 2022 via CM/ECF to all parties of record.

/s/  Marie A. Mattox
Marie A. Mattox