# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

CINDY HARRISON, as Legal
Guardian of Robert Gene Wells,

     Plaintiff,

v.                                          Case No. 5:21-cv19-TKW-MJF

TOMMY FORD, in his Official
Capacity as SHERIFF of BAY COUNTY,
And RICK ANGLIN, in his Supervisory
Capacity,

     Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANTS' MOTION FOR ATTORNEY
### AND EXPERT WITNESS FEES

     Plaintiff, Cindy Harrison, as legal Guardian of Robert Gene Wells, and the

undersigned counsel, respond to Defendants' Motion for Attorney and Expert

Witness Fees [ECF No. 77] (the "Instant Motion"[1]) as follows:

---

[1] On August 29, 2022, the Defendants filed the instant motion titled "Defendants'
Motion for Attorney and Expert Witness Fees." [ECF No. 77]. On April 26, 2022,
Defendants sent to the undersigned via email only a document titled "Defendants'
Motion for Sanctions Pursuant to Rule 11, Federal Rules of Civil Procedure."
Defendants did not file, as a motion, their "Motion for Sanctions Pursuant to Rule
11, Federal Rules of Civil Procedure"; instead, they filed it as an "Exhibit" to the
instant motion. [ECF No. 76-1]. The instant motion (ECF No. 77) will be referred to
as the "Instant Motion." The document at ECF No. 76-1 will be referred to as the
"April 26, 2022 Motion for Sanctions."

1

## I.    INTRODUCTION

Defendants' Instant Motion is, itself, frivolous. As explained below, it is not only procedurally defective but also makes several misleading arguments about the facts and laws pertinent to this action.

By way of example, Defendants claim that the Instant Motion is "procedurally sufficient" [ECF No. 77, p. 12]. However, it is abundantly clear Defendants never served it before the date it was filed with this Court (August 29, 2022). Instead, Defendants emailed (not served, as required by Rules 5 and 11) a different paper they listed as an "Exhibit" to the Instant Motion [See ECF No. 76, the "April 26, 2022 Motion for Sanctions"].

By way of another example, Defendants omit a text message agreement about the scope of their Rule 11 motion. In that conversation, which is explained more thoroughly below, Defendants agreed that Count III of Plaintiff's Complaint would no longer be the target of Defendants' Rule 11 ambitions. However, even though Plaintiff stopped advocating for Count III and abandoned the claim, Defendants still included argument about Count III in their Instant Motion.

Other examples of the wrongful nature of the Defendants' Instant Motion are explained throughout this response.

2

## II.    BACKGROUND

1.      On April 26, 2022, counsel for Defendants sent (via email only) a document titled "Defendants' Motion For Sanctions Pursuant to Rule 11" (referred to herein as the "April 26, 2022 Motion for Sanctions.") [See ECF Nos. 76-1 and 76-2].[2] Assuming for the moment it was adequately served under Rule 5(a) (a false assumption), the 21-day safe harbor period would expire on May 17, 2021.[3]

2.      On May 12, 2022, the Defendants filed a Motion for Summary Judgment. [ECF No. 52]. On that same day, they filed a Motion to Strike the Testimony of the Plaintiff's Expert (Ron McAndrew). [ECF No. 47].

3.      On May 16, 2022, within the 21-day safe harbor period, counsel for Plaintiff emailed counsel for Defendants (Jennifer Hawkins), informing her that Plaintiff would agree to stipulate the dismissal of Count III. See attached **Exhibit A**.

4.      Not having heard back from Ms. Hawkins regarding the May 16, 2022 email, on May 17, 2022 counsel for Plaintiff text messaged counsel for Defendant restating the agreement to dismiss Count III. See attached **Exhibit B**. As reflected in the attached text message thread,[4] counsel for Defendants acknowledging the

---

[2] Plaintiff's counsel never consented in writing to receipt of any motions for sanctions, attorneys' fees, or costs in this case.

[3] Twenty-one days after April 26, 2021 is May 17, 2021.

[4] The messages include discussions about a case other than the instant one, so those parts of the thread have been redacted. Should the Court wish to see the entire thread without redactions, Plaintiff would ask permission to file it under seal.

agreement and stated that the April 26, 2022 Motion for Sanctions would "only apply to the remaining counts." Those text messages read as follows:

> Marie Mattox:  **I have agreed within the safe harbor time to dismiss count 3.** Not sure what I need to do other than that. I'll file the notice of dismissal of that claim.

> Jennifer Hawkins:  Yes. **I agree you are dismissing count 3 within the safe harbor period. So my rule 11 will only apply to the remaining counts.** Count 4 was dismissed by judge while ago. – so I don't think you need to do anything on that. Otherwise I think we are on the same page – I just am not drafting the dismissal for you. I am not objecting to your dismissal of count 3. **So. I think we are on the same page?**

> Marie Mattox:  **Yes and thank you.**

(emphasis supplied). Thus, as of May 17, 2022, it was clear to Plaintiff's counsel that all counsel were "on the same page" and the April 26, 2022 Motion for Sanctions would "only apply to the remaining counts."

5.      On June 13, 2022, in lieu of filing a dismissal, Plaintiff responded to Defendants' Summary Judgment Motion without addressing Count III, thereby abandoning it. [ECF No. 60]. The Court entered its Summary Judgment Order on August 22, 2022, noting it was apparent Plaintiff had abandoned the claim. [ECF Nos. 74, p.20].

6.      On August 29, 2022, the Defendants filed the Instant Motion. [ECF No. 77]. Never before August 29th had the Instant Motion been seen or served on Plaintiff or his counsel.

## III.   SECTION 1988 LIABILITY

As an initial matter, section 1988 does not authorize a fee award against a party's attorney.  Roadway Exp., Inc. v. Piper, 447 U.S. 752, 761, 100 S. Ct. 2455, 2461, 65 L. Ed. 2d 488 (1980) ("Neither § 1988 nor § 2000e–5(k) makes any mention of attorney liability for costs and fees. Roadway identifies nothing in the legislative records of those provisions that suggests that Congress meant to control the conduct of litigation. Without any evidence that Congress wished to alter the uniform structure established by the 1853 Act, we are reluctant to disrupt it.", footnote omitted).[5]  Moreover, as explained below, to avoid a chilling effect on civil rights litigation, section 1988 fees are rarely awarded to Defendants.

### A.   Section 1988 Awards To Defendants Are Rare Because It Undercuts The Efforts Of Congress To Promote The Vigorous Enforcement Of" Civil Rights Laws

Years ago, the Supreme Court established a double standard for attorney fee awards. See Christiansburg Garment Co. v. EEOC, 434 U.S. 413, 98 S.Ct. 698, 54 L.Ed.2d (1978). On the one hand, prevailing plaintiffs in civil rights actions are to be awarded attorney fees in all but exceptional circumstances. See, e.g., Newman v.

---

[5] Should fees or costs be entered against Cindy Harrison, Legal Guardian, and/or Robert Gene Wells, they reserve the right to show the Court their limited ability to pay in the bifurcated procedure. "The law in [the United States Court of Appeals for the Eleventh C]ircuit is clear that ability to pay should be considered in the award of attorney's fees under § 1988." Baker v. Alderman, 158 F.3d 516, 528 (11th Cir. 1998).

Piggie Park Enterprises, 390 U.S. 400, 402, 19 L.Ed.2d 1763, 1766 (1974)(class action brought under Title II of the Civil Rights Act of 1964, § 204(a), 48 U.S.C. § 2000a–3(a)). Prevailing defendants, on the other hand, may be awarded attorney fees only when the plaintiff's claim is "frivolous, unreasonable, or groundless, or ... plaintiff continued to litigate after it became so." Roadway Express Inc. v. Piper, 447 U.S. 752, 762, 65 L.Ed.2d 488, 498 (1980), quoting Christiansburg Garment Co. v. EEOC, supra, at 657.

In Christiansburg Garment Co., the Supreme Court examined fee awards against plaintiffs in Title VII actions and concluded that:

> a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

434 U.S. at 421, 98 S.Ct. at 700, 54 L.Ed.2d at 657. This standard was later held applicable to claims arising under 42 U.S.C. § 1988 for attorneys' fees. Pasley v. City of Jesup, Georgia, No. CIV.A. 283-176, 1984 WL 2573, at *2 (S.D. Ga. Aug. 7, 1984), citations omitted. Therefore, defendants in a section 1983 action are only entitled to an award of attorneys' fees if, without regard to the existence of subjective bad faith on the part of the plaintiff, the action initiated was "frivolous, unreasonable, or without foundation." Id.

In applying these criteria, the Christiansburg Court admonished district courts to "resist the understandable temptation to engage in post hoc reasoning by

concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." 434 U.S. at 421–22, 54 L.Ed.2d at 657. Although acknowledging the need to deter meritless litigation, the Court nevertheless was concerned that assessing counsel fees against plaintiffs would "substantially add to the risks inherent in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." 434 U.S. at 422; 54 L.Ed.2d at 657. Likewise, an award to Defendants pursuant to section 1988 would also undercut the efforts of Congress to promote the vigorous enforcement of civil rights actions.

**B.** **Defendant Is Not The Prevailing Party To This Lawsuit**

Section 1988 is only available to a "prevailing party." 42 U.S.C. § 1988; Miami Herald Publishing Co. v. City of Hallandale, 742 F.2d 590, 591 (11th Cir.1984) ("Prevailing for purposes of § 1988 is exhibited by the fact that the litigant 'has acquired the primary relief sought.' ") (quoting from Iranian Students Association v. Edwards, 604 F.2d 352, 353 (5th Cir. 1979)).[6] Here, the Court

---

[6] Alternatively, if the Court does not deny Defendant's Motion outright, the Motion is at best premature and improper at this stage, and the Court should deny the Motion without prejudice until the end of the case. See Lichtenstein v. Consolidated Serv. Group, Inc., 173 F.3d 17, 23 (1st Cir. 1999) (emphasizing that "[c]ourts should, and

declined to enter judgment on Counts V and VI of the Amended Complaint (claims for common law negligent training and negligence). [ECF No. 74, p. 25]. Should Plaintiff prevail on one or both of these state law counts, he will have "acquired the primary relief sought" and will be the prevailing party in this litigation.[7]

### C.   Plaintiff's Claims Were Not "Frivolous, Unreasonable, Or Without Foundation"

Section 1988 only permits an award against a plaintiff upon a finding that the action was frivolous, unreasonable, or without foundation. As explained below, they were not.

### 1.   Deliberate Indifference/Failure to Protect - Counts I and II

Plaintiff is indisputably a vulnerable person,  being cognitively and physically disabled due to car accidents in 2015 and 2016. [Summary Judgment Order, ECF No. 74, p. 2]. He has low intellectual functioning, impaired speech patterns, and

---

often do, defer consideration of certain sanctions motions until the end of [the litigation] to gain a full sense of the case and to avoid unnecessary delay of disposition of the case on the merits. This is a sensible practice where [as here] the thrust of the sanctions motion is that institution of the case itself was improper"); Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., No. 00 Civ. 1115(LAK), 2000 WL 528633, at *1 (S.D.N.Y. May 2, 2000) (denying Rule 11 motion without prejudice "to renewal at conclusion of litigation").

[7] Moreover,  when a plaintiff's civil rights lawsuit involves both frivolous and non-frivolous claims, a court may grant reasonable fees to the defendant under § 1988, but only for costs that the defendant would not have incurred but for the frivolous claims. Fox v. Vice, 563 U.S. 826, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011). Plaintiff reserves the right to maintain this argument in a second phase of the bifurcated procedure, should there be one.

memory difficulties. [Id.]. He also has difficulty walking and uses a walker to get around. [Id.]. Defendants had him in custody after he was arrested for nonviolent crimes, namely drug possession with the intent to sell and several misdemeanors. [Id. at 2].

Defendants housed Plaintiff with an inmate accused of child molestation, plus another inmate "tied to a recent high-profile murder" – i.e., inmates Bell and McCoy. [Id. at 4]. According to another inmate, Bell and McCoy had previously "constantly picked on" Plaintiff. [Id. at p. 6, footnote 6]. After violating Plaintiff by shoving a rubber glove placed on a broom into his buttocks, Bell and McCoy were criminally charged and pled no contest. [Id. at p. 6].

Plaintiff claimed that Defendants were deliberately indifferent and failed to protect Plaintiff because they housing him with inmates such as a child molester and another inmate "tied to a recent high-profile murder." Bell and McCoy used a broom they were given access to by Defendants and assaulted Plaintiff as he made his way to a nearby bathroom shower after soiling himself. Moreover, Bell and McCoy had previously "constantly picked on" Plaintiff – a particularized threat that was witnessed by another inmate. [Id. at p. 6, footnote 6]. Plaintiff's pled that the situation predictably resulted in Plaintiff being sexually assaulted by an already accused molester and another inmate, untimely concluding in additional criminal charges for sexual battery against Bell and McCoy.

Although Plaintiff produced evidence that at least one person knew he was "constantly picked on" by Bell and McCoy, Plaintiff needed only show that prison officials were aware of a general risk to inmates in his situation. Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001), citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Supreme Court in Farmer anticipated just such a scenario:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842-43, 114 S.Ct. 1970  (quotation marks and citation omitted). "Similarly, Farmer made clear that a prison official defendant cannot escape liability by showing that he did not know that this particular inmate was in danger of attack: 'it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" Beers-Capitol at 131, citing Farmer at 843, emphasis in original.

Thus, under Farmer, Plaintiff did not need to show a particularized threat to himself. It is foreseeable that a disabled person, such as Plaintiff, would be assaulted by persons such McCoy and Bell. Plaintiff pled that that generalized risk is sufficient to establish a claim for deliberate indifference.

## 2. Deliberate Indifference to Plaintiff's Medical Needs - Count III

Defendants claim they had to expend additional attorney's and expert's fees in obtaining the dismissal of Count III [ECF No. 77, p. 8]; that is highly misleading. Defendants never disclosed the text message agreement between counsel wherein the parties both agreed to the eventual dismissal of Count III and that the April 26, 2022 Motion for Sanctions would "only apply to the remaining counts." Instead, the Instant Motion makes it seem like Plaintiff's counsel simply agreed to dismiss Count III and never followed up, forcing Defendants to expend additional fees and costs. Quite the contrary, in lieu of filing the dismissal, Plaintiff's counsel simply abandoned Count III without further input or objection by Defendants.

However, even assuming Plaintiff's abandonment of Count III was not tantamount to a "dismissal," Defendants did not have to expend additional attorneys and expert fees in obtaining dismissal of Count III. On April 26, 2022, Defendants emailed their April 26, 2022 Motion for Sanctions. On May 12, 2022, Defendants filed both their Summary Judgment Motion and a Motion to Strike the Testimony of Plaintiff's Expert. [ECF Nos. 47 and 52]. On May 17th, the agreement was reached amongst counsel to dismiss Count III. See attached **Exhibit B**. After this May 17th agreement, Plaintiff responded to the May 12th Summary Judgment Motion abandoning Count III, and the Court dismissed it as abandoned. [ECF Nos. 60 and 74]. Nevertheless, Defendants' Instant Motion wrongfully states: "Thus, Count III

11

was dismissed by the Court, as Plaintiff waived any argument by not addressing it in the motion, however, that did not come without expense to Defendant Sheriff, by way of attorney's fees and expert's fees." [ECF No. 77, p.8], emphasis supplied.

Defendants did not have to take any additional efforts to secure the dismissal of Count III after Plaintiff agreed to dismiss it on May 17th (which, by the way, was within the 21-day safe harbor period). Although Defendants filed a Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, it does not appear to address Count III (Deliberate Indifference to Serious Medical Needs – Sheriff Ford). [ECF No. 64]. However, even assuming Defendants' Reply did touch on Count III, it should have been limited to the issues raised in Plaintiff's Summary Judgment Response (which abandoned the claim) because it was a Reply. Thus, it is not accurate that Defendants were forced to spend additional fees or costs to secure the dismissal of Count III after Plaintiff's counsel agreed to dismiss it on May 17th.

Even less accurate is this statement by Defendant in its Instant Motion about the lack of a filed dismissal of Count III:  "Unfortunately, no such motion was ever filed with the Court, leaving Defendant Sheriff in a position where Count III had to be addressed in the motion for summary judgment." [ECF No. 77, p. 8]. Defendants' Motion for Summary Judgment was filed on May 12, 2022 [ECF No. 52 ]. Plaintiff's counsel's email agreeing to dismiss Count III was sent on May 16, 2022, and the text message understanding between counsel occurred on May 17, 2022. Even

assuming Plaintiff did not file a dismissal of Count III with the Court, Defendants had already filed their Summary Judgment Motion on May 12, 2022 --- thus, it is not at all accurate that not filing the dismissal left "Defendant Sheriff in a position where Count III had to be addressed in the motion for summary judgment." That statement is also incorrect.

### 3.    Plaintiff's ADA Claim

Regarding Plaintiff's ADA claims, Plaintiff is indisputably disabled as defined by the ADA. As noted by the Court, prison officials must accommodate an inmate's disability in a "reasonable and effective" manner. [ECF No. 74, p. 24, citing Arce v. Louisiana, 226 F. Supp. 3d 643, 651 (E.D. La. 2016) (citing Wells v. Thaler, 460 Fed. App'x. 303, 313 (5th Cir. 2012))]. Moreover, although the Court found that Plaintiff did not articulate what "program, service or activity" Plaintiff was denied, the Court also noted that it is "not clear" whether placement in a particular area of the jail is such a "program, service, or activity" as per the ADA. Id. at p.22 (". . . even if placement within a particular area of a jail is a "program, service or activity" (and it is not clear that it is). . . "). Thus, it is reasonable that a jail's "program, service or activity" includes the conditions where an inmate is housed, including utilization of the benefits of such housing like the bathroom and shower.

Moreover, although the Court also concluded that there was no evidence from which a jury could find that Mr. Wells' housing assignment was made with

deliberate indifference to his disabilities [ECF No. 74, p.22], the same arguments made surpa regarding deliberate indifference still apply. For example, the Defendants chose to house an accused child molester and another inmate "tied to a recent high-profile murder" together with a vulnerable, nonviolent, disabled inmate. Defendants left a broom beside the shower area in the same room with them. Another inmate saw that Bell and McCoy had previously "constantly picked on" Plaintiff – a particularized threat that Defendants' guards should have seen. Even assuming no particularized risk to Plaintiff, classifying disabled nonviolent offenders the same as violent child molesters are, at a minimum, deliberately reckless and indifferent. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), discussed supra. Thus, Plaintiff's claims were not at all without a reasonable basis.

### D.   Plaintiff's Expert Witness, Ron McAndrew

On May 12, 2022, Defendants filed their Motion to Strike Ron McAndrew as an expert. On May 26th, Plaintiff responded, stating he consented to the motion, and on the next day and in light of Plaintiff's consent, the Court entered a one-page Order on the matter. [ECF Nos. 55 and 56].

Despite Plaintiff's consent to the Motion to Strike, Defendants still complain. They now claim that Plaintiff "undermined the very purpose of Local Rule 7.1(B), which cost Defendants unnecessary time and expense in the preparation of their Daubert Motion." [ECF No. 77, p. 10 – 11].  However, it is unclear how Defendants'

argument about Plaintiff's expert supports section 1988 sanctions against Plaintiff. If anything, <u>the fact that Plaintiff's expert "had given 'his all-time worst deposition,' claiming it to be due to old age" supports that Plaintiff brought her claim in good faith</u>. It's not Plaintiff's fault that Expert Witness McAndrew provided unexpected testimony.

Moreover, Defendants did not include any reference about Plaintiff's expert in their April 26, 2022, Motion for Sanctions (the motion only filed as its "Exhibit 1" to its Instant Motion at ECF No. 76-1). However, without even attempting to comply with Rule 11's safe-harbor provision regarding Plaintiff's expert, Defendants have included argument about Ron McAndrew as support for Rule 11 sanctions.[8]  That is patently improper and, itself, a violation by Defendants of Rule 11's requirement that it "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." <u>See</u> Rule 11(c)(2). If Defendants believed this expert witness issue was a proper basis for Rule 11 sanctions, they should have properly followed the procedures required under Rule 11 for bringing it.  <u>See O'Boyle v. Sweetapple</u>, No. 14-cv-81250-KAM, 2016 WL 9559919, at *2–3 (S.D. Fla. Feb. 22,

---

[8] <u>See</u> ECF No. 77, p. 12 – 13 ("With regard to the substance of the Motion, undersigned counsel references this Court to the above-referenced arguments, as set forth in the section regarding entitlement based upon 42 U.S.C. §1988.")

2016) ("If Mayor Morgan believed the amended complaint merited Rule 11 sanctions, he should have served a new Rule 11 motion challenging that pleading to begin a new safe-harbor period.").

### E.    Defendants' Failure to Offer to Settle

Defendants tout that they never offered to settle this case [ECF No. 77, p. 11]; however, the applicable fact is that Plaintiff never unreasonably refused to settle this case. These facts support <u>not</u> awarding fees and costs against Plaintiff under section 1988. Otherwise, Defendants hoping to recover their fees and costs would be discouraged from offering any settlements in section 1988 cases.

When explaining the general factors that may be considered (including that regarding settlement), the Court in <u>Sullivan</u> cited two cases, one of which was <u>E.E.O.C. v. Kimbrough Investment Co.</u>, 703 F.2d 98, 103 (5th Cir.1983). <u>See Sullivan v. Sch. Bd. of Pinellas Cnty.</u>, 773 F.2d 1182, 1189 (11th Cir. 1985). In <u>Kimbrough Investment Co.</u>, the court noted that "This trial was held only after the government's [plaintiff, the E.E.O.C.'s] attempts to settle the case failed." <u>Kimbrough Inv. Co.</u>, 703 F.2d at 103 . The court stated:

> **This trial was held only after the government's attempts to settle the case failed.** The employer's own offer of settlement through adoption of an affirmative action plan, in the words of the district court, "suggested the need for some steps to correct racial imbalance in certain aspects of its work force." The employer argues that the EEOC's case was brought vexatiously because it used flawed and misleading statistics in its trial exhibits. We recognize that the EEOC used statistical evidence that on its face in some measure lacked probative

value. But some testimony and some analysis of hiring practices was valid probative evidence. **We cannot conclude the case was vexatious.**

E.E.O.C. v. Kimbrough Inv. Co., 703 F.2d 98, 103 (5th Cir. 1983), emphasis supplied.  Thus, it is obvious that the plaintiff's attempts to settle in Kimbrough Inv. Co. were an argument against sanctions.

In this case, Defendants admit they never offered anything to resolve this matter, even a nuisance value settlement. This is not the situation where a plaintiff refuses to settle, thus driving up the costs of litigation. Defendants have it backward, their refusal to settle is a factor weighing against the imposition of fees or costs against Plaintiff.

### F.    Dismissal Prior to Trial

Although Plaintiff's federal claims have been dismissed, his state law claims are still alive. Thus, there has not been a dismissal prior to trial; the trial should now occur in the state court.[9]

### IV .   RULE 11

Defendant's Motion for Rule 11 Sanctions is itself improper and unsupported

---

[9]  Moreover, the federal claims were dismissed at a late stage of these proceedings – if Plaintiff's case was genuinely frivolous, Defendants could have moved for summary judgment earlier in the case. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1187-88 (11th Cir. 2005) (noting that defendant might have avoided much of the expense of defending the claims had it conducted this litigation differently because requesting a "prompt decision will likely avoid significant unnecessary discovery.").

by law or fact. It is contrary to the spirit and intent of Rule 11, which should not "be prepared to emphasize the merits of a party's position ... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11 (Advisory Committee Notes, 1993 Amendment). Moreover, in moving for sanctions under Rule 11, Defendants violated Rule 11 multiple times.

### A. The Court Should Deny The Motion Because It Is Procedurally Defective

Rule 11's procedural requirements and limitations are strictly construed. Robinson v. Alutiq-Mele, LLC, 643 F.Supp.2d 1342, 1350 (S.D. Fla. 2009) ("Because of the penal nature of Rule 11, the procedural requirements of Rule are strictly construed"); Chex Sys., Inc. v. DP Bureau, LLC, 2011 WL 5459683, at *3 (M.D. Fla. 2011) (same). Accordingly, "[n]early every federal appellate court in the country has held that a Rule 11 motion can be granted only where the movant demonstrates strict compliance with the safe harbor provision." Rocket Real Est., LLC v. Maestres, No. 15-62488-CIV, 2017 WL 4303783, at *4 (S.D. Fla. Apr. 10, 2017), report and recommendation adopted, No. 15-62488-CIV, 2017 WL 4303784 (S.D. Fla. May 18, 2017), aff'd, 749 F. App'x 952 (11th Cir. 2019).

### 1. The Instant Motion Was Not Served 21 Days Before It Was Filed

Rule 11 requires the movant to serve the motion on the nonmovant in accordance with Rule 5. Fed. R. Civ. P. 11(c)(2). Only after serving the motion and

affording the nonmovant twenty-one days to take remedial measures—the "safe harbor"—may the moving party file their motion with the Court. Id. Rule 5 does not explicitly authorize service by email, see Fed. R. Civ. P. 5(b), and Defendants did not have an agreement in writing with Plaintiff to serve him with a motion for sanctions via email. See Fed. R. Civ. P. 5(b)(2)(F).[10]

In a decision like the instant case, the Northern District of Texas recently held that a Rule 11 motion was invalid because it had only been emailed to counsel. Setliff v. Zoccam Techs., Inc., No. 3:21-CV-2025-B, 2022 WL 1092962, at *2 (N.D. Tex. Apr. 12, 2022). The court held that, even though  the defendants substantially complied with the Rule's requirements, this is insufficient because "[c]ompliance with the service requirement is a mandatory prerequisite to an award of sanctions." Id. at *3. Moreover, those strict requirements cannot be waived. Id., citing In re Pratt, 524 F.3d 580, 586–88 (5th Cir.2008).

That strict compliance is required is also the law in this Circuit. Geico Gen. Ins. Co. v. Hampel, No. 11-61620-CIV, 2012 WL 204284, at *2 (S.D. Fla. Jan. 6, 2012), report and recommendation adopted, No. 11-61620-CIV, 2012 WL 204176

---

[10] If they did, it was Defendants' obligation to produce it along with their Motion. Emergency Recovery, Inc. v. Hufnagle, No. 8:19-cv-329-T-24JSS, 2019 WL 9089594 at *1 (M.D. Fla. June 12, 2019) (At all times, the burden of proof as to whether a party and/or his attorney have violated Rule 11 rests exclusively on the movant). Defendants never produced, nor can they produce, any written consent by Plaintiff or her counsel to service of any motion for sanctions solely via email.

(S.D. Fla. Jan. 24, 2012) ("Courts consistently have held that 'strict compliance with Rule 11 is mandatory.'" citing In re Pratt, 524 F.3d 580, 588 (5th Cir.2008)); See also Matter of Barnett, No. 18-30832-JPS, 2019 WL 329596, at *2 (Bankr. M.D. Ga. Jan. 23, 2019) (citing In re Pratt for the same proposition); Miller v. RelationServe, Inc., 2006 WL 5849318, at *6 (S.D.Fla. Dec.1, 2006) ("[I]n this Circuit the procedural requirements of Rule 11 must ... be strictly construed."). Notably, both the court in Setliff and the court in Hampel cited to the same 5th Circuit decisions in coming to their conclusions: In re Pratt, 524 F.3d 580, 586–88 (5th Cir.2008). Thus, the analysis by the court in Setliff should be equally persuasive in this Circuit because, in both Circuits, the procedural requirements of Rule 11 must be strictly construed.

### 2. Defendants' Instant Motion Is Materially Different Than The One They Emailed

Rule 11 requires that "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged...contention...is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2) (emphasis added). "Thus, the plain language of Rule 11 provides that the movant must file with the court after the expiration of the safe harbor period the motion that was served upon the adversary." Hyman v. Borack & Assocs., P.A., No. 8:12-CV-1088-T-23TGW, 2012 U.S. Dist. LEXIS 183566, at *7 (M.D. Fla. Dec. 14, 2012) (emphasis supplied); see also Robinson v.Alutiiq-Mele, LLC, 643 F. Supp. 2d 1342,

1351 (S.D. Fla. 2009) (denying Rule 11 motion where, inter alia, motion filed with court not the same motion that was served on non-moving party during safe harbor); In re Kirk-Murphy Holding, Inc., 313 B.R. 918, 921 (N.D. Fla. 2004) (interpreting bankruptcy rule 9011, which is identical to Rule 11)("sanctions are to be initiated by motion, and served upon the offending party 21 days prior to filing the same sanctions motion with the court."); Kearney Constr. Co. LLC v. Travelers Cas. & Sur. Co. of Am., No. 8:09-CV-1850-T-30TBM, 2016 WL 11448596, at *3 (M.D. Fla. Jan. 21, 2016) (FTBB's failure to serve a copy of the actual motion for sanctions upon Plaintiff at least twenty-one days prior to its filing with the court warrants denial of the instant motion under Rule 11.)

Here, Defendants never served (or emailed) a copy of the Instant Motion before filing it with this Court on August 29, 2022. The document that was served on Plaintiff's counsel, titled "Defendants' Motion for Sanctions Pursuant to Rule 11, Federal Rules of Civil Procedure" (i.e., the April 26, 2022 Motion for Sanctions) [ECF No. 76-1] is vastly different from the Instant Motion. Most of the April 26, 2022 Motion for Sanctions appear to be boilerplate legal citations – some not even appropriate for the situation. [See ECF No. 76-1, p. 7 (Wherein Defendants mysteriously state: "To survive a motion to dismiss, a cause of action for deliberate indifference must adequately plead the existence of three components:. . . .

21

(emphasis supplied)]. The April 26, 2022 Motion for Sanctions itself even recognizes the uncertainty in the applicable law, stating in its footnote 2:

> In Hoffer, footnote 2, the Eleventh Circuit recognized that a panel of the Court "recently suggested that the more than mere negligence standard in McElligott is more consistent with Farmer v. Brennan than the more than gross negligence standard in Townsend." (internal quotations and citation omitted). However, the Court noted that the "competing articulations – 'gross' vs. 'mere' negligence – may well represent a distinction without a difference…" based on an interpretation by the Supreme Court.

[EFC No. 76-1, p. 7].

On one of the rare occasions the analysis in the April 26, 2022 Motion for Sanctions attempts to reference the facts of this case, it appears that Defendants were challenging Count III of Plaintiff's complaint (which Plaintiff agreed to dismiss within the safe harbor period). [See ECF No. 76-1, p. 7 ("There is no record evidence of medical treatment being denied, rather this is a claim where Plaintiff is alleging failure to protect, thus, this claim cannot be sustained.")]. Moreover, the Motion for Sanctions Pursuant to Rule 11 only threatens "Plaintiff, Robert Gene Wells, and his counsel." [ECF No. 76-1, p. 1, 9]. However, the Defendants' current Motion is also aimed at Cindy Harrison –referring to Plaintiff as "she." [ECF No. 77, p. 10]. In sum, the April 26, 2022 Motion for Sanctions is a hastily prepared document that would not support sanctions even if the Defendants had filed it instead of the Instant Motion.

As best, Defendant's April 26, 2022 Motion for Sanctions cannot be seen as anything other than a warning letter.  Courts in the 11th Circuit, including the Northern District, make it clear that Rule 11 "warning letters" are insufficient. Miller v. RelationServe, Inc., No. 05-61944-CIV, 2006 WL 5849318, at *6 (S.D. Fla. Dec. 1, 2006) ("Accordingly, it follows that in this Circuit the procedural requirements of Rule 11 must also be strictly construed. A strict construction of the Rule here requires that the Court follow what the Northern District found to be the conclusion of the "overwhelming majority of courts" that a warning letter is not the functional equivalent of serving a motion for sanctions."); see also Kearney Constr. Co. LLC v. Travelers Cas. & Sur. Co. of Am., No. 8:09-CV-1850-T-30TBM, 2016 WL 11448596, at *3, footnote 1 (M.D. Fla. Jan. 21, 2016) ("under 28 U.S.C. § 1927, the Eleventh Circuit has squarely held that the standards applicable to an award of sanctions must be 'strictly construed.'").

### 3.    Failure to File Separate Motions

As noted by this Court in reference to the Instant Motion (which combines a request for fees and costs under section 1988 and a Rule 11 motion):  "Arguably, the motions should have been filed as separate documents because Fed. R. Civ. P. 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion." [ECF No. 80, footnote 1]. Noncompliance with that requirement has been described as a "fatal defect." Id., citing, e.g., O'Boyle v. Sweetapple, 2016 WL

9559919, at *3-4 (S.D. Fla. Feb. 22, 2016) (denying Rule 11 motion as "procedurally defective" because it was combined with a motion seeking fees under §1988). But see Ridder v. City of Springfield, 109 F.3d 288, 294 n.7 (6th Cir. 1997) (another case the Court referenced, reaching the opposite conclusion).

Other courts in this Circuit have also held similarly to O'Boyle.  For example, Batton v. Oak Inv. Grp. Corp., No. 2:18-CV-01361-JEO, 2018 WL 11395454, at *1 (N.D. Ala. Aug. 29, 2018) (denying sanctions in part because "Plaintiff failed to follow the procedural requirements of Rule 11(c)(2)"); Barnes v. Gulfstream Aerospace Corp., 2012 WL 463743, at *1 (S.D. Ga 2012) ("not only is the separate motion requirement unambiguously demanded by Rule 11(c)(2), but also by the case law").

Here, Defendants' Instant Motion exemplifies the wisdom behind having a party file a motion for fees and costs under section 1988 differently than Rule 11. Defendants, in their Instant Motion, are vague about who the target of their section 1988 request is against – something they would not be able to do if the motions were separately filed. Moreover, if the motions were separate, it would further highlight the frivolity of the Rule 11 "portion" of the Instant Motion. That shallow argument, which amounts almost exclusively to a direction to "see above," would not be possible had the two motions been separately filed. Thus, the better approach is that

reached by the Southern District in O'Boyle and the Defendants' Instant Motion for Rule 11 sanctions should be summarily denied.

**B.     Defendants Did Not Carry Their Burden To Prove A Violation Of Rule 11**

As discussed supra, in a section 1983 action, defendants are only entitled to an award of attorneys' fees if, without regard to the existence of subjective bad faith on the part of the plaintiff, the action initiated was "frivolous, unreasonable, or without foundation." Pasley v. City of Jesup, Georgia, No. CIV.A. 283-176, 1984 WL 2573, at *2 (S.D. Ga. Aug. 7, 1984). "Rule 11 is intended to deter claims with no factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." Davis v. Carl, 9106 F.2d 533, 538 (11th Cir. 1990) (emphasis in original). Thus, "[s]anctions [under Rule 11] are warranted when a party exhibits a deliberate indifference to obvious facts, but not when the party's evidence to support a claim is merely weak." Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1294 (11th Cir. 2002) (internal quotation marks and citations omitted). At all times, the burden of proof as to whether a party and/or his attorney have violated Rule 11 rests exclusively on the movant. Emergency Recovery, Inc. v. Hufnagle, No. 8:19-cv-329-T-24JSS, 2019 WL 9089594 at *1 (M.D. Fla. June 12, 2019).

Defendants fail to carry their burden to prove Plaintiff and counsel violated the standards governing Rule 11. Instead of attempting to address Rule 11's

requirements squarely, Defendants Instant Motion states: "With regard to the substance of the Motion, undersigned counsel references this Court to the above-referenced arguments, as set forth in the section regarding entitlement based upon 42 U.S.C. §1988." [ECF No. 77, p. 13]. Defendants failed to prove that Plaintiff and his counsel showed "deliberate indifference to obvious facts" or that the claims have no factual or legal basis. Instead, their arguments (as outlined in the section 1988 portion of the Instant Motion) argue that Plaintiff's claim is weak – something that cannot support sanctions per Rule 11.

Notably, even the Defendants' April 26, 2022 Motion for Sanctions recognizes the uncertainty in the applicable law. [EFC No. 76-1, fn. 2 (discussing in footnote 2 that "competing articulations – 'gross' vs. 'mere' negligence – may well represent a distinction without a  difference…").  In another footnote, this time in the Instant Motion, Defendants note that "Bell constantly picked on Wells by 'joking around calling his name and getting him riled up'." [EFC No. 77, p. 6]. Thus, even the Defendants' April 26, 2022 Motion for Sanctions and the Instant Motion show a genuine dispute as to the law and facts in this case.

### C.    Plaintiff Is Entitled To Recover His Reasonable Attorney's Fees And Costs In Defending Defendants' Baseless Motion

"Owing partly to the risk of misuse, Rule 11(c)(2) permits the award of expenses to the party prevailing on the sanctions motion[.]" Adhikari v. Daoud & Partners, Civil Action No. 09- cv-1237, 2017 WL 5904782 at *3 (S.D. Tex. Nov.

30, 2017). "If the non-movant prevails, there is no requirement in the rule's text or commentary that the movant's conduct be found worthy of sanction." Id. To award fees to the prevailing opponent, "[t]here should be something negative, then, in the losing party's conduct, but it does not have to be so serious that sanctions are appropriate." Id. at *8 (citing various cases where prevailing party fees were awarded to a Rule 11 opponent).

Thus, "in cases where the initial movant's Rule 11 motion is denied, a court may issue sanctions against the movant because 'the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.' The nonmoving party need not file a cross-motion to receive fees as the court can award reasonable expenses to the prevailing party, including attorney's fees, incurred in presenting or opposing the motion." E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). Specifically, Rule 11(c)(2) provides: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." The 1993 Advisory Committee Notes to Rule 11 further provide that a Rule 11 motion should not "be prepared to emphasize the merits of a party's position ... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11 (Advisory Committee Notes, 1993 Amendment).

Moreover, an award of reasonable attorney's fees and costs in having to defend against an unsupported or baseless Rule 11 motion can be issued without the court having to determine that the motion was itself frivolous. See Sarmiento v. Pena, No. 14-cv-66, 2016 WL 3964808 at *2 (S.D. Tex. July 25, 2016) (awarding fees under Rule 11(c)(2) and noting, "[t]he Court need not find that a defendant's motion is frivolous to award reasonable award fees. As the Magistrate Judge found, there does not seem to be a good-faith basis supporting [the] motion. Therefore, [the opponent] should not have to bear the costs of responding." (internal citation omitted)); Vanliner Ins. Co. v DerMargosian, No. 12-CV-5074-D, 2014 WL 1632181 at *2 (N.D. Tex. Apr. 24, 2014) ("[A]lthough the [movant's] amended motion need not have been frivolous to warrant a fee award under Rule 11(c)(2), the fact that it was frivolous informs the court's finding that a fee award is warranted. [The opponent] should not have to bear the expense of paying its lawyers to respond to an amended sanctions motion that should never have been filed." (footnote omitted)).

Here, Defendants and their counsel have brought a reckless and ill-advised Motion for Rule 11 Sanctions. Specifically, the Defendants and their counsel:

    a.    Made claim for Rule 11 sanctions in the Instant Motion, despite the text messaged agreement between counsel that "rule 11 will only apply to the remaining counts";

28

b.     Failed to inform the Court of the text message arrangement between counsel on May 17, 2022, instead only referencing the "email correspondence" of May 16, 20222 [ECF No. 77, p. 3];

c.     Failed to confer in good faith regarding any sort of problem Defendant may have had regarding Plaintiff's approach of simply abandoning Count III (instead of filing a notice of dismissal), instead seeking sanctions about it in the Instant Motion;

d.     Made the misleading statement in its Instant Motion that Defendants were forced to expend additional "attorney's fees and expert's fees" in obtaining the dismissal of Count III. Even assuming Plaintiff did not file a dismissal notice, Defendants' Motion for Summary Judgment was filed before Plaintiff agreed to dismiss it, no "reply" regarding Count III was necessary, and the Court entered summary judgment against Plaintiff on that Count;

e.     Made the misleading statement in the Instant Motion that because no dismissal of Count III was filed, it left "Defendant Sheriff in a position where Count III had to be addressed in the motion for summary judgment." Even assuming Plaintiff did not file a notice of dismissal of Count III, Defendants had already filed their Summary Judgment Motion as of the time Plaintiff agreed to dismiss Count III;

f.     Failed to adhere to Rule 11's requirements that "the motion" be served 21 days before it is filed, instead emailing a different motion (the April 26, 2022 Rule 11 Motion) than the one it ultimately filed (the Instant Motion);[11]

g.     Claim that "Plaintiff was put on notice with the service of Defendants' Rule 11 Motion on April 26, 2022," when in reality Defendants' Instant Motion is almost entirely different than the April 22, 2022 Motion for Sanctions;

---

[11] Rule 11 states in part: "Since such a motion **may be filed only** if the offending paper is not withdrawn or corrected within 21 days after service of **the motion**, it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency." (emphasis supplied).

  h. Seek wholly baseless section 1988 and Rule 11 sanctions regarding Plaintiff's Expert Witness, McAndrew, claiming that Plaintiff's ultimate consent to McAndrew's removal was somehow a violation of either section 1988 or Rule 11;

  i. Seek Rule 11 sanctions regarding Plaintiff's Expert Witness, McAndrew, when the issue was not even addressed in the April 26, 2022 Rule 11 Motion;

  j. References as an "Exhibit" to its Instant Motion a mostly boilerplate document (i.e., the April 26, 2022 Rule 11 Motion), with very little analysis and citing inapplicable law (such as that applicable to a motion to dismiss); and

  k. Made frivolous arguments in the Instant Motion's section 1988 request for fees and costs, such as the notion that Defendants' refusal to offer any settlement at all is a factor supporting somehow supporting Defendants' position.

Moreover, Defendants' bad faith in filing its Instant Motion is exemplified by its Paragraphs 4 and 5. Therein, Defendants state:

  4. **On April 26, 2022**, Defendants served Plaintiff with a Motion for Sanctions pursuant to Rule 11, Fed. R. Civ. P. [ECF No. 76-1] As of April 26, 2022, all discovery depositions were complete, and Plaintiff's motion to substitute expert and extend the discovery deadline was denied by this Court. [ECF No. 44]. **By way of email correspondence**, Plaintiff, by and through her undersigned counsel, agreed to stipulate to a dismissal of Count III, however, no such dismissal was ever filed with the Court.

  5. **On May 12, 2022**, Defendants filed a motion for summary judgment as to Counts I, III, V, VI, and VII. . . .

[ECF No. 77, p. 3-4], emphasis supplied.  The above is highly misleading because the email correspondence sent by the undersigned was on May 16, 2022 – not April 26, 2022.  See attached **Exhibit A**. That is a material fact, as shown by the

Defendants' subsequent argument that: "Unfortunately, no such motion [i.e., a dismissal of Count III] was ever filed with the Court, leaving Defendant Sheriff in a position where Count III had to be addressed in the motion for summary judgment." [ECF No. 77, p. 8]. Thus, Paragraphs 4 and 5 of the Instant Motion are highly misleading, conveniently supporting the false narrative that Defendants were forced to file their summary judgment motion on Count III because Plaintiff did not file a dismissal of Count III (and instead abandoned the claim).

Any one of the above acts by Defendants, standing alone, justifies sanctions against Defendants and their counsel pursuant to Rule 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."). Accordingly, Plaintiff is due his attorneys' fees incurred as the prevailing party in this Rule 11 dispute. See, e.g., Crawford v. Japan Airlines, No. 03-00451-LEK-KSC, 2013 WL 2420715 at *9 (D. Haw. May 31, 2013) (awarding fees to Rule 11 opponent pursuant to Rule 11(c)(2) because "Plaintiff failed to comply with the procedural requirements of Rule 11 and … the Plaintiff's Motion is substantively without merit").

## V.    CONCLUSION

Based on the foregoing, the Instant Motion should be denied reading section 1988. As to Rule 11, the Instant Motion is frivolous; it does not present grounds warranting the imposition of any sanctions against Plaintiff or his counsel pursuant

to Fed. R. Civ. P. 11. It makes numerous misstatements, omits pertinent factual background, and fails in multiple respects to comply with Rule 11's strict procedures. Thus, Plaintiff requests that he be found the prevailing party and be awarded his reasonable attorney's fees associated with defending Defendant's baseless motion pursuant to Fed. R. Civ. P. 11(c)(2) against Defendants and their counsel.

## CERTIFICATE OF COMPLIANCE 7.1(F)

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing is 8,113 words in length.

Respectfully submitted,

/s/  Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on counsel of record by CM/ECF on this 26th day of September 2022.

/s/  Marie A. Mattox
Marie A. Mattox